**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BENJAMIN W GRIFFITH III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:23-cv-190 (MTT)** |
| ) | |
| **APPALACHIAN ANTIQUE** ) | |
| **HARDWOODS LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER

Plaintiff Benjamin W. Griffith III moves for default judgment against defendant Appalachian Antique Hardwoods, LLC ("Appalachian"). Doc. 5. For the following reasons, that motion (Doc. 5) is **GRANTED**.

## I. BACKGROUND

The allegations of the complaint, deemed admitted because of Appalachian's default, establish these facts. Appalachian is a North Carolina business that "provides wood based green building materials to clients." Doc. 1 ¶¶ 2, 8. On September 15, 2022, Appalachian provided a proposal to Griffith "for the purchase, freight, fabrication, installation, and lodging of [a] crew for a project known as 'The Griffith Cabin' in Macon, Georgia." *Id*. ¶ 9. The total proposed project cost was $494,504.50—including $274,812.50 for "the cost of timbers and freight to the project site" and $219,692.00 for "installation." *Id*. ¶¶ 12, 13.

Griffith paid Appalachian a $247,252.25 deposit toward "project materials." *Id*. ¶ 12. On October 19, 2022, Griffith "elected to stop the project in Macon and began

negotiating the return and refund of his deposit."  *Id*. ¶ 14.  From October 19, 2022 to January 11, 2023, Griffith exchanged "multiple correspondences" with Appalachian where Appalachian employees and agents stated "they needed to figure out their project costs" and "made several unfulfilled promises to return correspondence with an answer."  *Id*. ¶ 15.  "Further, direct statements were made by the CEO of Appalachian, Zachary Guy, that he knew Mr. Griffith was owed money."  *Id*.  On January 26, 2023, Griffith sent a "formal notice and demand" to Appalachian requesting that Appalachian either return the deposit or deliver the materials.  *Id*. ¶ 16.  Appalachian never refunded the deposit or delivered the materials.  *Id*. ¶¶ 17-18.

On May 30, 2023, Griffith filed suit against Appalachian alleging a claim for conversion, attorney fees, and punitive damages.[1]  *Id*. ¶¶ 20-33.  Appalachian was served with process on August 1, 2023, but did not file a responsive pleading within 21 days.  Docs. 3; 4.  Accordingly, default was entered against Appalachian on August 23, 2023.  Doc. 4.  On August 28, 2023, Griffith moved for default judgment.  Doc. 5.  On September 20, 2023, the Court heard evidence relating to Griffith's damages.  Docs. 7; 8.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise."  After default has been entered, the Clerk may enter a

---

[1] In the alternative to his conversion claim, Griffith asserts a claim for unjust enrichment.  Doc. 1 ¶¶ 20-24. Because the Court finds Appalachian liable for conversion and Griffith elects conversion damages, the unjust enrichment claim is not considered.  Doc. 5 at 7; *see Continental Cas. Co. v. Trucks, Inc*., 2011 WL 5325537, at *2, n. 2 (M.D. Ga. Nov. 3, 2011) ("Because the Court grants default judgment as to the breach of contract claims, the Court does not need to consider Plaintiffs' alternative unjust enrichment and account stated claims.").

default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  The Court must hold an evidentiary hearing to determine damages unless all the essential evidence is already in the record.  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings.").

After the Clerk's entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations in the complaint.  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]  However, an entry of default against the defendant does not establish that the plaintiff is entitled to a default judgment.  The defendant is not deemed to admit facts that are not well-pleaded or conclusions of law.  *Id.*  "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit a mere conclusion of law.  In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages."  *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)).  The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages.  *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264,

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters.").

## III. JURISDICTION

To enter a valid default judgment, the Court must have both subject matter and personal jurisdiction. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."). Griffith alleges sufficient facts to demonstrate the Court has diversity jurisdiction over his state law conversion claim against Appalachian. 28 U.S.C. § 1332. Specifically, Appalachian is an LLC whose members reside in North Carolina, and Griffth, a Georgia citizen, alleges the amount in controversy exceeds $75,000. Docs. 1 ¶¶ 1, 2, 5; 6.

Moreover, the complaint sufficiently alleges that the Court has personal jurisdiction over Appalachian. Personal jurisdiction can be either general or specific. General jurisdiction allows all kinds of suits against a defendant, but only in states where the defendant is "at home" or, in most cases, is served with process. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1024 (2021). Specific jurisdiction, on the other hand, must arise out of the events or transactions underlying the claim that form the basis of the lawsuit. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). In other words, for specific jurisdiction to be proper, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between

those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Here, Griffth adequately alleges specific jurisdiction over Appalachian.  Griffith hired Appalachian to construct "The Griffth Cabin" at the job site in Macon, Georgia.  Doc. 1 ¶ 9.  Thus, Appalachian was responsible for transporting materials to the job site, Appalachian "performed job site visits," and Griffth "paid for the installation and delivery of product" to the job site.  *Id*. ¶ 4.  All of these actions occurred in the forum state of Georgia.  *Id*. ¶¶ 4, 9.  In sum, the Court has both subject matter and personal jurisdiction over this matter.

## IV. DISCUSSION

Griffith alleges a conversion claim against Appalachian for the failure to refund the deposit or deliver the project materials.  Doc. 1 ¶¶ 25-29.  Additionally, Griffith requests attorney fees under O.C.G.A. § 13-6-11, punitive damages, and post-judgment interest.[3]  *Id*. ¶¶ 30-33.  Griffith has adequately alleged liability on his conversion claim and has submitted sufficient evidence to support an award of $247,252.25 in conversion damages, $4,998.25 in attorney fees, and $5,000.00 in punitive damages.

### A. Appalachian's Liability

#### 1. Conversion

"[I]n cases where it appears that a defendant has come into possession of a plaintiff's property lawfully, a plaintiff may prove conversion of that property by showing: '(1) title to the property or the right of possession[;] (2) actual possession in the other

---

[3] Although Griffith initially requested an award of "$247,252.25 with interest," he has since abandoned his claim for pre-judgment interest.  Doc. 1 at 9.

party[;] (3) demand for return of the property[;] and (4) refusal by the other party to return the property'"  *Exec. Cars, LLC v. W. Funding II, Inc.*, 349 Ga. App. 517, 527-28, 826 S.E.2d 370, 378 (2019) (alterations in original) (quoting *Bo Phillips Co. v. R.L. King Props., LLC*, 336 Ga. App. 705, 707, 783 S.E.2d 445, 449 (2016)).  "There can be a conversion of specific money as well as chattels."  *Grant v. Newsome*, 201 Ga. App. 710, 710, 411 S.E.2d 796, 798 (1991).

"Specific money," refers to money earmarked for a specific purpose, such as money in an escrow fund, money disbursed by a wire transfer, or money reflected by a negotiable instrument, check, or promissory note.  *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359, 551 S.E.2d 765, 769 (2001); *Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 306 Ga. App. 451, 458, 702 S.E.2d 711, 717 (2010) (holding money disbursed by a wire transfer was sufficiently identifiable); *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 820-21, 583 S.E.2d 6, 8-9 (2003) (holding that money reflected by a document, "such as a check, promissory note, or negotiable instrument," sufficiently shows "the full value of the intangible rights"); *Hudspeth v. A & H Const., Inc.*, 230 Ga. App. 70, 71, 495 S.E.2d 322, 323 (1997) (holding money specifically earmarked to purchase a one-third interest in certain real property was "sufficiently specific and identifiable to support a conversion action"); *Horizon Air Charter, LLC v. ACM Havayollari Sanayi TIC.LTD.STI*, 2022 WL 16702798, at *6 (S.D. Ga. Nov. 3, 2022) (holding the plaintiff plausibly alleged a conversion claim based on the defendant's failure to return a deposit).

Here, Griffith made a deposit of $247,252.25, which was specifically earmarked "for the purchase of the reclaimed timber materials."  Doc. 1 ¶¶ 12, 26.  Appalachian

never delivered the reclaimed timbers or refunded the deposit, even after Griffith

demanded Appalachian return the deposit or deliver the timbers.  *Id*. ¶¶ 16-18.  These

allegations are sufficient to entitle Griffith to default judgment on his conversion claim.

    *3. Attorney Fees*

    Griffith also asserts a claim for attorney fees pursuant to O.C.G.A. § 13-6-11.

Doc. 1 ¶ 33.  To be successful on a claim for attorney fees, a plaintiff must show that

"the defendant has acted in bad faith, has been stubbornly litigious, or has caused the

plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.  Georgia courts have

awarded attorney fees where a defendant required the plaintiff to file a lawsuit to collect

money owed, causing unnecessary trouble and expense.  *Fresh Floors, Inc. v. Forrest*

*Cambridge Apartments, L.L.C.*, 257 Ga. App. 270, 271, 570 S.E.2d 590, 592 (2002).

Recovery for causing unnecessary trouble and expense is authorized "if there exists no

bona fide controversy or dispute regarding liability for the underlying cause of action."

*Id*. at 271, 570 S.E.2d at 592.  "The fact that judgment was entered by default does not

make an award of attorney fees improper."  *Id*.; *see Hope Elec. Enterprises, Inc. v.*

*Proforce Staffing, Inc.*, 268 Ga. App. 302, 304, 601 S.E.2d 723, 726 (2004) ("By forcing

[the plaintiff] to resort to litigation in order to collect the debt plainly owed under the

contract, [the defendant] has caused [the plaintiff] unnecessary trouble and expense,

and the trial court did not err in awarding [the plaintiff] attorney fees under OCGA § 13-

6-11.").

    Appalachian failed to respond to Griffith's demand for repayment or delivery of

the materials and Appalachian made statements that it "knew Mr. Griffith was owed

money."  Doc. 1 ¶¶ 15-19.  Furthermore, Appalachian has not responded or otherwise

defended this lawsuit demonstrating that no bona fide controversy or dispute exists.  As a result, Griffith has demonstrated that he is entitled to reasonable attorney fees under O.C.G.A. § 13-6-11.

## B. Damages

### 1. Conversion

Griffith requests $247,252.25 in damages resulting from the conversion claim. Docs. 1 at 9; 5 at 2-4.  During the September 20, 2023 hearing, Griffith submitted evidence that he paid Appalachian $247,252.25 as a deposit toward building materials. Docs. 9-1; 9-2.  Donald McKinney, an individual Griffith hired to assist with the building of "The Griffith Cabin," testified that Appalachian has not delivered the materials or refunded any portion of the deposit.  Doc. 8.  Accordingly, the Court finds that Griffith is entitled to an award of $247,252.25 in conversion damages.

### 2. Attorney Fees

At the September 20, 2023 hearing, Griffith presented evidence of his attorney fees.  Docs. 9-8; 12; 12-1.  In total, Griffth seeks $4,998.25 in attorney fees for 30.75 hours spent drafting relevant pleadings and motions, and preparing for the damages hearing.  Docs. 12; 12-1.  Based on the evidence, the Court finds that the fees and expenses Griffith incurred were reasonable.  *See Eways v. Ga. R.R. Bank*, 806 F.2d 991 (11th Cir. 1986).  Accordingly, Griffith is entitled to fees totaling $4,998.25.

### 3. Punitive Damages

Finally, Griffith requests punitive damages because Appalachian refused "to communicate," "return the deposit," or "deliver the materials," demonstrating "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which

would raise the presumption of conscious indifference to consequences." Doc. 1 ¶ 31. Griffith's allegations are sufficient to support an award of punitive damages. *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 842, 650 S.E.2d 307, 313 (2007). Accordingly, Griffith is entitled to $5,000.00 in punitive damages. However, the complaint notes possible mitigating facts. Griffith unilaterally terminated the agreement, and the complaint and the evidence adduced at the hearing acknowledges the possibility that Appalachian might have incurred some expenses before termination. *See* Doc. 1 ¶¶ 14-15. Griffith did not request a specific punitive damages award but rather left the amount of the award to the Court's discretion.

## V. CONCLUSION

For the above reasons, Griffith's motion for default judgment (Doc. 5) is **GRANTED**. Griffith is entitled to $247,252.25 in conversion damages, $4,998.25 in attorney fees, and $5,000.00 in punitive damages. In sum, default judgment is entered against Appalachian totaling $257,250.50 plus post-judgment interest as provided by law. Failure to comply with this order may result in sanctions including a finding of contempt.

**SO ORDERED**, this 11th day of October, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT